# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WATERBURY, | Case No. 1:05-cv-00764-LJO-DLB PC |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME |
| v. | (Doc. 79) |
| A. K. SCRIBNER, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND PLAINTIFF'S ACTION BE DISMISSED WITH PREJUDICE |
| Defendants. | |
| | (Doc. 70) |
| / | OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.    Findings and Recommendation**

    **A.    Procedural History**

Thomas Waterbury ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's amended complaint, filed May 9, 2006, against defendants A. K. Scribner, D.D. Sheppard-Brooks, S. Bradley, J. Amerson, V. Castillo, and S. Rodriguez ("Defendants") for violation of Plaintiff's rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.  On January 30, 2009, Defendants filed a motion for summary judgment, after receiving an extension of time.  (Doc. 70.)  On March 9, 2009, Plaintiff filed an

opposition to Defendants' motion, after obtaining an extension of time. (Doc. 74.)[1]  Defendants did not file a reply to Plaintiff's opposition. The Court deems the matter submitted. L. R. 78-230(m).

### B. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on March 20, 2007. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 22.)

2

form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87 (citations omitted).

//

**C.     Undisputed Facts**[2]

1. Plaintiff was incarcerated at California State Prison - Corcoran (CSP-Corcoran) at times material to the matters at issue following his conviction for murder in the first degree with special circumstances, a jury finding him guilty of murder for monetary gain.[3]

2. Defendants were employed by the California Department of Corrections and Rehabilitation (CDCR) and assigned to CSP-Corcoran in the following capacities: Defendant Scribner was the Warden; Defendant Sheppard-Brooks was the Chief Deputy Warden; Defendant Castillo was an Appeals Coordinator; Defendant Bradley was a Supervisor in the Accounting Department; and Defendants Amerson and Rodriguez were Account Technicians.

3. In August 1996, Gregory Harding, the Chief Deputy Director of Support Services for CDCR, sent a memorandum to all wardens with the California Prison System, implementing new procedures for processing inmates' tax refund checks. All tax refund checks received by the mail room were to be delivered to the accounting office for the Facility Representative. The Facility Representative was to determine the inmate's eligibility to receive the tax refund. Background research was to be conducted to ascertain the validity of the refund check by certifying whether the refund amount matched the amount of taxes withheld from the inmate's pay, and verifying the inmate's

---

[2] Plaintiff objects to Defendants' Undisputed Facts 1, 3, 4, 6, 7, 13, 14, 16, 17, 21, 22, and 23. The Court will address each objection. All page number references are to the parties' numbering unless otherwise indicated.
Plaintiff's verified amended complaint may be treated as an opposing affidavit to the extent that it is verified and set forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985). Plaintiff's opposition is not verified under the penalty of perjury, and thus cannot be used as an opposing affidavit.

[3] Plaintiff objects to the authenticity and veracity of the exhibit concerning Plaintiff's criminal conviction. (Doc. 71-2, Exh. A at 1-4.) Plaintiff's objection should be OVERRULED. Attached to the exhibit is an affidavit by Cookie Navarro, Custodian of Record for Plaintiff's central prison file, attesting to the authenticity of the documents. (Doc. 71-2, Exh. A p. 2 of 36.) Plaintiff presents no evidence that these documents are inauthentic. The Court notes that Defendants' evidence submitted in support of Undisputed Fact ("UF") 1 does not indicate the identity of the victim.

4

    date of incarceration.  If eligibility to receive a tax refund could not be established, the Facility Representative was to contact the appropriate agency to establish the validity of the check.  Also listed were the agency contacts for the Internal Revenue Service (IRS) and the Franchise Tax Board (FTB).[4]

4. On September 9, 1996, James Tilton, Deputy Director of the Administrative Services Division, sent a memorandum clarifying what might be considered as a questionable tax refund.  Specifically noted was the inmate's date of incarceration.  If the inmate was known to have worked prior to incarceration, was receiving a joint tax refund from a spouse, or if CDCR was aware the inmate had taxable prior year income, the Facility

---

[4] Plaintiff objects on the grounds that Defendants' Exhibit B has not been verified or authenticated.  (Doc. 75, Pl.'s Dispute of Defs.' Statement of Undisputed Facts ¶ 6.)  Plaintiff's objection should be OVERRULED.  Plaintiff's objections solely based on procedural grounds are not sufficient to bar evidence.  See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (finding that district court's consideration of unauthenticated evidence in conjunction with motion for summary judgment is exception to authentication requirement when objection is based on purely procedural grounds); see also Hal Roach Studios, Inc., v. Feiner & Co., 896 F.2d 1542, 1552 (9th Cir. 1990) (holding district court's consideration of unauthenticated evidence in conjunction with motion for summary judgment is harmless error when a competent witness with personal knowledge could have authenticated the document).  Plaintiff raises this same objection for Defendants' UF 4, 6, and 7.  Plaintiff's objections should be OVERRULED for the above reasons for each UF.

    Plaintiff also objects to Exhibit B on the grounds that Defendants denied Plaintiff "the ability to fairly and accurately present his claims."  (Doc. 75, ¶ 6.)  Plaintiff contends that Defendants did not disclose the Exhibit B documents until January 29, 2009, one day before filing their motion for summary judgment.  (Doc. 75, ¶ 6.)  Plaintiff contends that Defendants violated this Court's discovery order, dated May 8, 2009, regarding "all documents relating to the handling an [sic] processing of inmate tax refund checks to Plaintiff within 45 days of the Order."  (Doc. 75, ¶ 6.)

    On June 4, 2009, the Court ordered Defendants to file a response to Plaintiff's allegation.  (Doc. 76.)  On June 19, 2009, Defendants filed their response.  (Doc. 77.)  Defendants contend that they complied with the Court's discovery order.  Defendants on June 24, 2008, produced the only document they had in their possession responsive to Plaintiff's discovery request: a memo from the Trust Restitution Office.  (Doc. 77, Defs.' Resp. 2:23-25.)  Defendants' counsel attests that the delay in production of the other documents was due to counsel having to conduct her own investigation in preparation of the motion for summary judgment.  (Doc. 77, Defs.' Resp. 2:26-3:8.)  Defendants did not possess these other documents prior to counsel's investigation.  Upon discovering the documents, Defendants amended their response to Plaintiff.  (Doc. 77, Defs.' Resp. 3:8-9.)  The Court finds this explanation sufficient to overcome Plaintiff's objections regarding Exhibit B.  It appears that Defendants submitted to Plaintiff all the information that they had available within a reasonable time after the information was discovered.

    Furthermore, the prejudice to Plaintiff's ability to fairly and accurately present his claims is not present.  Plaintiff appears to contend that if Defendants had submitted the documents requested in discovery to Plaintiff earlier, Plaintiff would have had the opportunity to amend his complaint to add defendants and a claim that Defendants violated due process by having an underground policy in place.  (Doc. 74, pp. 11-13.)  Plaintiff disputes the authenticity of the documents because they were not certified by the Office of Administrative Law as required under state law for official policies.  (Doc. 75.)  This objection has no bearing in this proceeding, as explained in the analysis section, and should be OVERRULED.

    On July 7, 2009, Plaintiff filed a "motion for extension of time for Plaintiff to file a response to Defendants' response to this Court's order, dated June 3, 2009."  (Doc. 79.)  The Court did not request and does not require a response from Plaintiff to resolve the issue in the Court's June 3, 2009 order.  Accordingly, Plaintiff's motion for extension of time is DENIED.

1  Representative should not refer the tax refund check to the IRS.  Included were additional
2  telephone numbers for the IRS and FTB.[5]
3  5. CDCR issued an administrative bulletin regarding inmate receipt of tax refund checks.
4  According to the bulletin, the Facility Representative was to assist outside agencies in
5  determining an inmate's suitability for receiving a tax refund check.  To this end, staff
6  were to contact the IRS Questionable Refund Program Agent or the FTB Fraud and
7  Prevention Unit to determine an inmate's eligibility for a refund.
8  6. On June 15, 2000, David Tristan, the Deputy Director of Institutions, sent a memorandum
9  to all Wardens.  According to the memorandum, the IRS Criminal Investigations Branch
10  had determined that inmate schemes involving fraudulent tax returns resulted in a loss of
11  over a million dollars per year.  The IRS requested the assistance of CDCR in identifying
12  and deleting these fraudulent tax returns.  Staff were advised that any tax refund check in
13  an amount exceeding $250.00 was to be verified with the IRS prior to being deposited
14  into the inmate's trust account.  An inmate's eligibility to receive the check would be
15  verified by the IRS within forty-eight hours.  Any check determined to be fraudulent was
16  to be returned to the IRS.[6]
17  7. In March 2004, a short memorandum was issued reiterating the procedures for processing
18  an inmate's tax refund checks if the inmate had been incarcerated the entire tax year.  In
19  such cases, trust office staff were to contact the IRS.[7]
20  //
21  //

---

[5] Plaintiff objects to Defendants' "narrow reading" of the memorandum.  Plaintiff quotes from the memorandum, "The purpose of this memorandum is to provide further clarification as to what questionable or suspicious tax refunds **may be**."  (Doc. 75, ¶ 9.)  This objection should be OVERRULED.  Defendants' interpretation is reasonably within the language of the memorandum.

[6] Plaintiff's objection that Defendants' UF 6 is too "generic" and "ambivalent" (Doc. 75, ¶ 11) should be OVERRULED.  Defendants' UF 6 is a reasonable interpretation of the memorandum in question.

[7] Plaintiff objects that the short memorandum is inauthentic because there is no official heading, signature block, or any indicia to indicate the authorship of the document.  (Doc. 75, ¶ 13.)  As stated previously in footnote 4, so long as a competent witness could authenticate the document, an objection based on procedural grounds alone is not sufficient to bar the evidence from use in a motion for summary judgment.  See Burch, 433 F. Supp. 2d at 1120.

8. All prisoner mail is opened by the mail room staff. If the mail room receives a check for an inmate, the mail room staff remove the check and stamp the outside of the envelope with the inmate's name and housing unit on the envelope, and the amount of the check. A copy of the envelope is sent to the inmate. The mail room then logs the information onto a spreadsheet.

9. After the information is logged onto the spreadsheet, a member of the mail room staff brings all checks and money orders, wrapped in the spreadsheet, to the accounting office. An account technician or cashier compares the checks to the entries on the spreadsheet, and if they match, signs the spreadsheet for verification. Tax refund checks are generally placed on a separate spreadsheet.

10. The cashier then makes copies of the checks and money orders, with three items per page, and runs an accounting tape based on the copies of the checks.

11. The accounting office then codes the check for the type of deposit. Certain types of deposits are exempt from restitution. After coding the checks, the cashier then adds the checks again, runs another tape, and inputs the checks into the computer.

12. Ordinarily, inmates cannot receive gold colored Supplemental Security Income (SSI) checks, welfare checks, tax refund checks, veteran's benefit checks, worker's compensation checks, or unemployment benefits. When these check come into the accounting office, the accounting officer notifies the facility representative that checks are being held pending determination of eligibility.

13. If a tax refund check is received, the cashier checks to see how long the inmate has been incarcerated. If more than one year, the cashier certifies with the Internal Revenue Service (IRS) or Franchise Tax Board (FTB) that the check is legitimate.[8]

---

[8] Plaintiff objects that Defendants' Exhibit B, even if authentic, disputes Defendants' UF 13. (Doc. 75, ¶ 15.) Plaintiff contends that it is the facility representative, not the cashier, who was responsible for certifying with the IRS the legitimacy of a tax refund check. (Doc. 75, ¶ 15.) Defendants' UF 13 cites Exhibit C, Declaration by Defendant J. Amerson. Plaintiff thus contends that Defendants' Exhibit B is inconsistent with Defendants' Exhibit C. The Court disagrees. There is nothing in the record that indicates Defendant J. Amerson's declaration of proper procedure is inaccurate. Plaintiff contends that it was the responsibility of the Facility Representative to contact "June Campbell," the IRS employee listed in Exhibit B. (Doc. 71-2, Exh. B, p. 23 of 36.) However, the memorandum relied upon by Plaintiff does not state that a facility representative was the only one who could contact

1  14.  The accounting officer or cashier faxes a copy of the check to the FTB or the IRS Fraud Unit. Someone from the agency notifies the accounting office of the validity of the check. Unauthorized tax refund checks are returned to the appropriate agency.[9]

2  15.  In April 2004, the accounting office received a tax refund check for Plaintiff, in the amount of $680.29.  Plaintiff had been incarcerated since 1981, more that a year prior to the tax year.

3  16.  Following procedure, Defendant Amerson faxed a copy of the check to the IRS Fraud Unit. A short time later, Defendant Amerson received notification from the Fresno Fraud Detection Center that the check for Plaintiff had been issued in error.  She was instructed to return the check to the IRS, and she did so.[10]

4  17.  Neither Defendant Amerson, nor anyone in the CSP-Corcoran accounting/trust office, made the determination of whether Plaintiff was eligible to receive a tax refund check. In the case of Plaintiff, Defendant Amerson acted appropriately, pursuant to the procedures set forth in the Inmate Trust Control Accounting Unit Training Manual and the Department's administrative bulletins and memoranda.[11]

---

the IRS. (Doc. 71-2, Exh. B, p. 23 of 36.) Plaintiff's objection should be OVERRULED.

[9] Plaintiff disputes the truth of Defendant Amerson's declaration and contends that there is no evidence in the record that supports Amerson's statements. (Doc. 75, ¶ 17.) Plaintiff contends that the proper procedure was not followed by Defendants. The Court find Plaintiff's argument to be unpersuasive. UF 14 is written in general terms, and its wording is a reasonable interpretation of the record. Plaintiff's contention that Amerson's declaration is self-serving, without more, does not create a viable dispute. Plaintiff's objection should be OVERRULED.

[10] Plaintiff objects that Defendant Amerson ever faxed a copy of the check to the IRS Fraud Unit. (Doc. 75, ¶ 19.) Plaintiff contends that the copy of Plaintiff's check submitted in Defendants' Exhibit C is merely a photocopy of the check required to be kept on file. Plaintiff's contentions are supported by no evidence.
Plaintiff also contends that there was any deficiency in his refund check because the IRS did not once respond to any inquiry by Plaintiff as to the check's authenticity. (Doc. 75, ¶ 19.) Plaintiff contends that the IRS memorandum indicating the check was issued in error is therefore not authentic. (Doc. 75, ¶ 19.) Plaintiff's argument that the absence of something indicates the truth of its opposite is not persuasive.  It is reasonable to conclude that the IRS memo was issued in error in light of the fact that Plaintiff eventually received a replacement check. This does not prove that the memo is inauthentic. Consequently, Plaintiff's objections should be OVERRULED.

[11] Plaintiff contends that per the memoranda submitted by Defendants, "tax refund checks received for inmates will also be delivered by the mail room staff to the accounting office for the facility representative's determination of the inmates' eligibility to receive the tax refund check." (Doc. 71-2, Exh. B, p. 20 of 36; Doc. 75, ¶ 21.) Plaintiff concludes that since Defendant Amerson never contacted a facility representative, she is responsible for making that determination. (Doc. 75, ¶ 21.) However, Plaintiff's reasoning ignores the other parts of that memo, namely: "if the eligibility of the inmate cannot be determined after all research has been done on the tax refund

8

18. Plaintiff filed an inmate grievance regarding the return of his tax refund check on May 22, 2004. Plaintiff claimed that a hold had been placed on his April 2004 tax refund check, but when he tried to use the money for canteen items, the canteen manager informed Plaintiff that there was no money in his trust account. Plaintiff requested that the money be placed into his trust account and an investigation be initiated.

19. Defendant Amerson issued the informal response, advising Plaintiff that the tax refund check had been returned to the IRS. She also sent Plaintiff a redacted copy of the IRS memorandum requesting return of the check.[12]

20. On August 10, 2004, Defendant Amerson issued the first level response, and again attached a redacted copy of the memorandum from the IRS. Amerson also attached information to the response that would enable him to write to the Fresno Fraud Detection Center with questions concerning the matter.[13]

---

check, the facility representative shall contact the appropriate agency." (Doc. 71-2, Exh. B at 20.) There is nothing in the record to support Plaintiff's conclusion that Defendant Amerson decided the eligibility of Plaintiff's tax refund check prior to returning it to the IRS. Plaintiff's objection should be OVERRULED.

Plaintiff also objects to Defendant Amerson's statement that she complied with the Inmate Control Accounting Unit Training Manual on the grounds that he has never received disclosure as to the manual's contents and thus cannot verify whether Defendants have actually complied. (Doc. 75, ¶ 21.) Defendant Amerson's declaration is verified under penalty of perjury, and Plaintiff presents no evidence to contradict it. Plaintiff's objections to the policy are addressed and overruled as indicated in the analysis section. Accordingly, Plaintiff's objection should be OVERRULED.

[12] Plaintiff objects that Defendant Amerson did not comply with prison regulations regarding treatment of inmate appeals. (Doc. 75, ¶ 23.) This objection does not dispute Defendants' facts. Plaintiff also contends that his inmate appeal was not returned until August 6, 2004, which contradicts Defendant Amerson's response at the informal level. (Doc. 75, ¶ 23.) Plaintiff however presents no evidence to contradict Defendant Amerson's declaration. Plaintiff's objection should be OVERRULED.

[13] Plaintiff contests the timeline of events. (Doc. 75, ¶ 25.) Plaintiff's objection should be OVERRULED as indicated in footnote 12. Plaintiff's contention that the memorandum attached to the first level response to Plaintiff's inmate appeal is unverified or unauthenticated should be OVERRULED. As stated previously, the affidavit of the custodian of records is sufficient to authenticate the records in Defendants' Exhibit A.

Defendants in their undisputed facts contend that "Defendant Amerson was professional in all her dealings with Waterbury. At no time did Defendant Amerson tell Waterbury that accounting office staff members decided the tax refund check was issued in error, nor did she accuse Waterbury of filing a fraudulent claim." (Doc. 71, Defs.' Statement of Undisputed Facts ¶ 23.) Plaintiff contends that Defendant Amerson was unprofessional for failing to notify Plaintiff that his income check was being returned as required by statute, and for failing to follow the "underground policy" in Defendants' Exhibit B. (Doc. 75, ¶ 27.) Defendant Amerson's statement that she was professional in all her dealings with Plaintiff is opinion supported only by her own declaration, and disputed by Plaintiff in his amended complaint. (Pl.'s Am. Compl. A-6 to A-8.) Plaintiff also contends in his amended complaint that Defendant Amerson accused Plaintiff of committing fraud and that the accounting office had made the decision to return the check to the IRS. (Pl.'s Am. Compl. A-6 to A-8.) Plaintiff's verified complaint disputes Defendants' version of events. Plaintiff's objection here should thus be GRANTED.

9

21. Dissatisfied with Amerson's responses, Plaintiff requested review at the second level. On September 21, 2004, Defendant Sheppard-Brooks denied Plaintiff's grievance at the second level of review.

22. At the time of the denial by Sheppard-Brooks, the tax refund check in the amount of $690.48 had already been deposited to Plaintiff's trust account.

23. Plaintiff received a replacement check from the IRS in the amount of 690.48. The check included interest in the amount of $10.19.

24. The replacement refund check was deposited into Plaintiff's inmate trust account on September 3, 2004.  Plaintiff withdrew $300.00 on October 27, 2004, leaving a balance of $390.48.

**D.     Analysis**

*1.     Summary of Amended Complaint*

In his amended complaint, Plaintiff alleges that he filed a tax return in 2004, and was sent a refund check from the IRS in the amount of $680.29.  Plaintiff alleges that Defendants returned the refund check to the IRS in violation of his First Amendment right to receive mail.  Plaintiff alleges that Defendants failed to notify Plaintiff that the check was returned in violation of his rights under the Due Process Clause of the Fourteenth Amendment.  Plaintiff alleges that when he filed inmate grievances regarding his tax refund check, Defendants Castillo, Sheppard-Brooks, and Scribner failed to properly process his grievance.

*2.     Claim for Relief - First Amendment And Mail*

Prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995).  Prison regulations relating to the regulation of incoming mail are analyzed under the standard set forth in Turner v. Safley, 482 U.S. 78 (1987). Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  The regulation is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89.  In determining the reasonableness of the regulation, a court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the

10

1 "accommodation of the asserted constitutional right will have on guards and other inmates," and
2 (4) "the absence of ready alternatives." Turner, 482 U.S. at 89-90.
3  Defendants contend that their actions in dealing with Plaintiff's tax refund check
4 complied with the reasonableness standard set forth in Turner. The Court will analyze the Turner
5 standard factors, Defendants' contentions, and Plaintiff's objections, below.

6  **A.   Connection Between Regulation and Government Interest**

7  Defendants contend there is a rational connection between the regulation and the
8 legitimate government interest. The IRS had notified prison officials of the existence of
9 fraudulent tax return schemes by prisoners. (UF 6.) In response, prison officials implemented
10 safeguards to curtail such schemes. (UF 8-13.) In April 2004, the accounting office at CSP-
11 Corcoran, received a tax refund check for Plaintiff in the amount of $680.29. (UF 15.) Because
12 Plaintiff was an incarcerated prisoner for more than a year prior to the date of the check,
13 Defendant Amerson contacted the IRS by faxing Plaintiff's check to verify the check's
14 authenticity. (UF 13, 14, 16.) The IRS informed Defendant Amerson that the check had been
15 issued in error, and that the check should be returned. (UF 16.) Defendant Amerson
16 subsequently returned the check to the IRS. (UF 16.) Defendants contend that the prison
17 procedure requiring certification of a tax refund check before depositing it into an inmate's
18 account is a rationally-related regulation. (Doc. 70, Defs.' Mot. Summ. J. 7-8.) Defendants
19 contend that if the IRS verifies that the check was issued in error, returning the check is also a
20 rationally-related regulation. (Defs.' Mot. Summ. J. 8.) Defendants have satisfied their initial
21 burden in moving for summary judgment.
22  Plaintiff argues that the regulation in question is an underground policy and thus not a
23 valid regulation. (Doc. 74, Pl.'s Opp'n 14-16.) Plaintiff contends that regulations for inmate tax
24 refund checks required approval by the state's Office of Administrative Law ("OAL"). (Pl.'s
25 Opp'n 11-12.) Plaintiff also contends that Defendant Amerson should have complied with title
26 15 of the California Code of Regulations, concerning disposition of mail. (Pl.'s Opp'n 14.)
27 Plaintiff contends that under title 15, Plaintiff should have been notified prior to the return of the
28

mail, and that he be given an opportunity to appeal the decision. (Pl.'s Opp'n 14.) Plaintiff contends that Defendants should have complied with the regulations regarding mail, as opposed to Defendants' regulations regarding inmate tax refund checks, because regulations regarding mail were already adequate to deal with any potential tax fraud. (Pl.'s Opp'n 14-15.) Plaintiff contends a more reasonable policy would have been to screen "all tax returns being mailed to the IRS before they left the prison." (Pl.'s Opp'n 15.) Plaintiff contends that the legitimacy of the tax refund check would be easily ascertained after providing copies of his 1099-R forms to the accounting office. (Pl.'s Opp'n 15-16.)

Plaintiff's reasoning fails to demonstrate a genuine issue of material fact. Whether or not the OAL approved this regulation is not dispositive to this proceeding, which concerns only the constitutionality of the controlling prison regulation under the First Amendment and the Due Process Clause of the Fourteenth Amendment. Based on the record, Defendants have sufficiently demonstrated that the procedure for tax refund checks described above in the Undisputed Facts was in place during the relevant time and controlling during this action. This prison procedure is the one that must comply with constitutional requirements.

Under the Turner standard, the tax fraud regulatory measures described in the undisputed facts are a rational regulation. Certifying the validity of a tax refund check with the IRS prior to depositing it in an inmate's trust account is a reasonable policy to prevent fraudulent tax schemes in prison. Though Plaintiff contends that the IRS's error would have easily been resolved at the prison, the IRS, as the issuers of the tax refund check, would be in a better position to determine the validity of the check than prison officials would. Thus, Defendants' procedure satisfies the first Turner factor.

**B.     Alternative Means to Exercise the Right**

Defendants contend that Plaintiff had other means to exercise his First Amendment rights to receive the tax refund check. Defendants contend that Plaintiff could have arranged for the check to be deposited into an account outside of the prison. (Doc. 70, Defs.' Mot. Summ. J. 14.) Defendants also contend that Plaintiff could have requested relief from the IRS, which he did. (Defs.' Mot. Summ. J. 14.) Defendants also indicate that the restriction challenged occurred

only once. (Defs.' Mot. Summ. J. 14.) Defendants have satisfied their initial burden in moving for summary judgment.

Plaintiff contends that he is prohibited by law from having an account outside of prison. (Pl.'s Opp'n 16.) Plaintiff also contends that the restriction in question is occurring for two other tax refund checks. (Pl.'s Opp'n 16.) Plaintiff's arguments do not show a genuine dispute of material fact. Plaintiff's contention that the questioned restriction occurred more than once is not before this Court. Plaintiff also fails to dispute Defendants' contention that Plaintiff does have an alternative means to exercise his rights: Plaintiff can contest a fraud finding with the IRS directly, which Plaintiff apparently did. Defendants' procedure thus satisfies the second Turner factor.

### C.      Impact On Staff Or Prison Resources

Defendants contend that other procedures for verifying tax refund checks would adversely impact prison resources. Defendants contend for example that requiring prison officials to verify the legitimacy of refund checks would overwhelm CDCR, and that retrieving fraudulently obtained assets from would greatly impact time and resources of the accounting staff as well as IRS staff. (Doc. 70, Defs.' Mot. Summ. J. 8:20-28.) Defendants have satisfied their initial burden in moving for summary judgment.

Plaintiff contends that there exists a current policy in place to deal with a constitutionally protected interest which would not add any cost because there are staff already employed to handle these matters. (Doc. 74, Pl.'s Opp'n 17.) Plaintiff's argument does not demonstrate a genuine issue of material fact. Plaintiff cites no evidence that indicates there is prison staff readily available to deal with the legitimacy of a prisoner tax refund check. Handling of general mail-related issues and handling of tax refund checks are two substantially different tasks.

Plaintiff also contends that where the state can feasibly provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of postdeprivation remedy. This argument does not address the adverse impact on staff or prison resources if a different policy was in place. Thus, Defendants' procedure satisfies the third Turner factor.

//

1 **D.     Absence of Ready Alternatives**

2 Defendants contend that there is no easy alternative in place for processing tax refund
3 checks.  (Doc. 70, Defs.' Mot. Summ. J. 9.)  The burden to demonstrate an acceptable alternative
4 lies with the plaintiff prisoner.  Casey v. Lewis, 4 F.3d 1516, 1523 (9th Cir. 1993).

5 Plaintiff contends that pre-existing statutory regulations were in place that would have
6 safeguarded Plaintiff's due process rights and permitted CDCR to prevent any fraudulent claims.
7 (Doc. 74, Pl.'s Opp'n 18.)  Plaintiff apparently argues that prison regulations for mail are
8 adequate to deal with any fraud issues.  Plaintiff contends again that Plaintiff should have been
9 notified prior to the withholding of his mail, and that Plaintiff should have the opportunity to
10 contest any findings of fraud.  (Pl.'s Opp'n 18.)

11 Plaintiff's argument is insufficient to demonstrate a genuine issue of material fact.
12 Plaintiff does not demonstrate how the prison appeals process for withheld mail would
13 adequately be able to decide the legitimacy of a tax refund check.  At some point, prison officials
14 would presumably have to confirm with the IRS that the tax refund check in question was
15 properly sent to an inmate.  Defendants presented evidence that Plaintiff's refund check was
16 faxed to the IRS for confirmation of legitimacy, and that the IRS responded by indicating the
17 check to Plaintiff was issued in error.  (UF 16.)  It was at that point that Defendant Amerson
18 returned the check to the IRS. (UF 16.)  Plaintiff's proposed alternative is not easier.  Defendants
19 have thus satisfied the fourth Turner factor.

20 Because all four Turner factors are in favor of Defendants, Defendants' motion for
21 summary judgment as to the First Amendment claim should be GRANTED.

22 **3.     *Claim for Relief - Due Process***

23 Plaintiff also raises a due process claim.  To the extent that Plaintiff contends a liberty
24 interest, the Due Process Clause protects prisoners from being deprived of liberty without due
25 process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of
26 action for deprivation of due process, a plaintiff must first establish the existence of a liberty
27 interest for which the protection is sought.  "States may under certain circumstances create liberty
28 interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-

14

84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  The United States Supreme Court has concluded, for example, that prisoners' First Amendment rights are liberty interests protected by the Constitution.  See Procunier v. Martinez, 416 U.S. 396, 418 (1974), limited on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).

To the extent that Plaintiff is alleging a property interest, the Due Process Clause protects prisoners' interests in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984).  California provides an adequate postdeprivation remedy.  Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam).

Defendants contend that Plaintiff does not state a cognizable claim because Plaintiff complains that 1) Defendants Amerson, Bradley, and Rodriguez allegedly failed to abide by established procedures to deny Plaintiff his refund, and 2) defendants Scribner, Sheppard-Brooks, and Castillo failed to respond to or review Plaintiff's grievance procedure.   (Doc. 70, Defs.' Mot. Summ. J. 11.)  Defendants contend that Plaintiff's complaint is about "unauthorized action" which cannot form the basis of a due process claim.  (Defs.' Mot. Summ. J. 9-11.)

Defendants' argument does not fully address Plaintiff's claim.  Plaintiff's complaint concerns the withholding and return of Plaintiff's tax refund check without prior notice or an opportunity for appeal. (Doc. 14, Pl.'s Am. Compl. A-3.)  Plaintiff thus complains of failure to receive notice that his check was returned, in violation of his due process.  Plaintiff's claim however fails as a matter of law because defendants did not violate Plaintiff's due process.

Defendant Amerson faxed Plaintiff's check to the IRS to verify its authenticity.  (UF 16.)

15

The IRS notified defendant Amerson that the check was issued in error and requested that the check be returned. (UF 16.) Defendant Amerson, after being informed of this information, returned Plaintiff's check to the IRS. (UF 16.) Defendants did not make the determination that Plaintiff's check was issued in error. (UF 17.) Plaintiff subsequently received a replacement refund check from the IRS with interest. (UF 23-24.)

Plaintiff has demonstrated no genuine issue of material fact. Though the return of the check was discovered to be error on the IRS's part, Defendants had no reasonable way of knowing this at the time Plaintiff's check was returned. Defendants relied upon the IRS's determination that the check was issued erroneously in returning Plaintiff's check. Plaintiff subsequently received his check from the IRS. Plaintiff was thus not deprived of his property by the defendants. As discussed previously, defendants' regulation for IRS refund checks is a rational regulation under Turner. Defendants' motion for summary judgment as to the due process claim should be GRANTED.

### 4.     *Inmate Appeals Review*

Plaintiff in his amended complaint alleges a failure by defendants Castillo, Scribner, and Sheppard-Brooks to review his inmate appeals according to prison regulations. (Doc. 14, Pl.'s Am. Compl. 10, 15, 16.) Defendants contend that Plaintiff's claim against Defendants Correctional Counselor II Castillo, Scribner, and Sheppard-Brooks for failure to respond or review Plaintiff's inmate appeals pursuant to prison policy cannot form the basis of a due process violation. (Doc. 70, Defs.' Mot. Summ. J. 17.) Inmates are not entitled to a specific procedure for reviewing inmate appeals under due process. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)) (finding "inmates lack a separate constitutional entitlement to a specific prison grievance procedure"). Plaintiff's claim does not survive summary judgment. Defendants' motion for summary judgment here should be GRANTED.

//
//
//

### 5. *Respondeat Superior And Conspiracy*

Defendants contend that Plaintiff's allegations against Warden Scribner, Chief Deputy Warden Sheppard-Brooks, and Accounting Supervisor Sharon Bradley fail as a matter of law because Plaintiff alleges at most respondeat superior liability, which is not actionable under § 1983. Plaintiff's complaint against defendants Scribner, Sheppard-Brooks, and Bradley alleges that they conspired to violate Plaintiff's rights by covering up any improper action. (Doc. 14, Pl.'s Am. Compl. 9, 10, 16.)

A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. at 555 (internal quotations and citations omitted). Plaintiff's allegations of a conspiracy in his amended complaint do not rise above the speculative level and thus does not survive summary judgment.

Furthermore, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed

17

constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under § 1983 based on a theory of supervisory liability, plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  "Absent vicarious liability, each Government official . . . is liable only for his or her own misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Mere knowledge of a subordinate's alleged misconduct is insufficient. Id.

Plaintiff's claims against Scribner, Sheppard-Brooks, and Bradley are not sufficient to survive summary judgment.  Plaintiff does not allege personal involvement or responsibility by these defendants, and provides no evidence to demonstrate this other than speculation of conspiracy.  Accordingly, Defendants' motion for summary judgment here should be GRANTED.

### 6. *Qualified Immunity*

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 129 S. Ct. 808, 818 (2009) (finding that courts should use discretion in deciding which of the two prongs of qualified immunity analysis should be addressed first).

The other inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. This second inquiry "must be undertaken in light of the specific context of the case, not as a

1 broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must
2 have been 'clearly established' in a more particularized, and hence more relevant, sense:  The
3 contours of the right must be sufficiently clear that a reasonable official would understand that
4 what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).  In resolving
5 these issues, the court must view the evidence in the light most favorable to plaintiff and resolve
6 all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th
7 Cir. 2003).  Qualified immunity protects "all but the plainly incompetent or those who knowingly
8 violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

9     Because Defendants are entitled to summary judgment on other grounds, the Court
10 declines to address Defendants' qualified immunity claim.

11 **II.     Conclusion and Recommendation**

12     For the foregoing reasons, the Court HEREBY ORDERS that Plaintiff's motion for
13 extension of time to file a response, filed on July 7, 2009, is DENIED.

14     Furthermore, the Court HEREBY RECOMMENDS that Defendants' motion for
15 summary judgment, filed on January 30, 2009, should be GRANTED, and Plaintiff's action
16 should be DISMISSED with prejudice.

17     These Findings and Recommendations will be submitted to the United States District
18 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within
19 **thirty (30) days** after being served with these Findings and Recommendations, the parties may
20 file written objections with the court.  The document should be captioned "Objections to
21 Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file
22 objections within the specified time may waive the right to appeal the District Court's order.
23 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24

25     IT IS SO ORDERED.

26     Dated:   **August 19, 2009**                    **/s/ Dennis L. Beck**
                                                                UNITED STATES MAGISTRATE JUDGE
27

28